UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT


UNITED STATES OF AMERICA      :
                              :
       v.                     :        File No. 1:06-CR-113
                              :
JEFFREY RUSSELL               :
_____ :


RULING ON DEFENDANT'S MOTION TO SUPPRESS
(Paper 33)

I.   Introduction

       Defendant Jeffrey Russell ("Defendant") has filed this
Motion to Suppress evidence which the government seeks to admit
against him.  For the reasons set forth below, Defendant's motion
is denied.

II.  Background

       Based upon the record before the Court, including the
testimony offered at the May 31, 2007 evidentiary hearing,[1] the
Court finds the following facts.  On September 14, 2006, Nicole
Deuso ("Deuso") notified the Vermont State Police that Defendant,
her ex-boyfriend, had called her several times from a blocked
number and threatened her in violation of a state court order.

_____

       [1]The Court finds the testimony of Vermont State Troopers
John Bruzzi and Jeff Smith consistent and credible.  While
Defendant's testimony painted a vastly divergent picture of how
things unfolded on September 14, 2006, the Court finds his
testimony less than credible based on the Court's observation of
Defendant's demeanor during testimony and the fact that he was
under the influence of alcohol on the night in question.

1

Vermont State Trooper John Bruzzi ("Bruzzi") was notified of Deuso's complaint and called Defendant on his cellular phone. Battling dropped calls and poor reception (an all-too-familiar encounter in Vermont), Bruzzi was able to hear Defendant deny he had been calling Deuso but admit he knew he was prohibited from doing so.

Bruzzi then drove to Defendant's residence, a relatively small camper/trailer, where he was joined by fellow Vermont State Trooper Jeff Smith ("Smith").  Knocking on the door elicited no response so the Troopers walked around the home and through a window, saw Defendant in bed.  Prompted by Bruzzi's knocks on the window and calls, Defendant eventually arose, came to the door, and stepped out of the house onto a small raised deck area.  The Troopers immediately noticed Defendant had been drinking by the telltale signs of bloodshot eyes and the smell of alcohol.[2]  At all times though, Defendant appeared to be well aware of where he was and what was going on.

While all three were standing on the deck area, the Troopers asked Defendant about the evening's calls to Deuso and the restraining order.  Defendant maintained he had not called Deuso but acknowledged he had been served with the restraining order.

_____

[2]At the suppression hearing, Defendant explained he had consumed a fair amount of alcohol on the evening of September 14, 2006 such that he was still being affected by alcohol during his interactions with the Troopers.

The Troopers told Defendant he was going to be placed under arrest, whereupon Defendant turned as if intending to re-enter his house.  He was stopped from doing so, however, when Smith grabbed Defendant's arm and handcuffed his hands behind his back. Because Defendant was shoeless, Smith asked if he wanted shoes. Defendant indicated that he did and walked into his house to get them with the Troopers.

Once in the home and seated on the sofa, without being questioned or prompted by the Troopers, Defendant repeatedly explained he had not called Deuso and furthermore, that he could prove it by showing the Troopers his cellular phone located on the night stand in his bedroom.  After confirming with Defendant that he indeed wanted the Troopers to retrieve his cellular phone, Smith entered the bedroom and spotted two guns in plain view next to the night stand as well as Defendant's cellular phone on top of the night stand.  Knowing Defendant was prohibited from possessing guns, Smith seized the guns and cellular phone and returned to the living room area where Bruzzi and Defendant had remained.  Upon seeing Smith return with the guns, Defendant uttered that one of the guns did not work.  Smith then handed the phone to Bruzzi who, after confirming Defendant's desire for him to look at the phone, found that calls had been made to Deuso that evening.  The three left Defendant's home in the patrol cars.

The case originated on September 26, 2006 when Defendant was arrested for possessing firearms while under a final order of relief from abuse, in violation of 18 U.S.C. § 922(g)(8). Although it is somewhat unclear exactly what statements were made by Defendant on September 26, 2006 in connection with his arrest, the government asserts "Defendant admitted that he owned and had possessed the firearms seized by Trooper Bruzzi . . . [and] also admitted that he had called Deuso on September 14, 2006." (Paper 38 at 4).

III. <u>Discussion</u>

Defendant contends that the warrantless search of his home on September 14, 2006 was unlawful and therefore necessitates suppression of the cellular phone, guns, and statements obtained after the phone and guns were seized. When applied to the facts, Defendant's position does not withstand scrutiny.

To begin, while Defendant's motion does not challenge the existence of probable cause supporting the September 14, 2006 arrest, he contends that the Troopers unlawfully entered his home. The facts as found credible by the Court, however, are clear that Defendant was lawfully arrested outside of his home. It follows, therefore, that the Troopers were permitted to accompany Defendant into his home to retrieve his shoes, even if the idea to enter the home for this purpose originated with the Troopers. <u>See</u>, <u>e.g.</u>, <u>United States v. Harness</u>, 453 F.3d 752,

4

755-56 (6th Cir. 2006).  Despite that Defendant now surely wishes
he had risked the hazards of a shoeless night instead of leading
the Troopers into his home, "a suspect's poor choice does not
render unconstitutional an officer's objectively reasonable
offer."  Id. at 756 (quoting United States v. Garcia, 376 F.3d
648, 651 (7th Cir. 2004)).

Having found no constitutional infirmity with the home
entry, the Court turns to Defendant's contention that the
warrantless search of the bedroom ran afoul of the Fourth
Amendment.  The Fourth Amendment prohibits unreasonable searches
and seizures, and a search conducted without a valid warrant is
"per se unreasonable . . . subject only to a few specifically
established and well-delineated exceptions."  Schneckloth v.
Bustamonte, 412 U.S. 218, 219 (1973) (internal quotation marks
and citation omitted).  One of those exceptions arises where the
search is conducted pursuant to the free and voluntary consent of
an authorized person.  Id.  The government bears the burden of
proving that the consent to search was voluntary.  Id. at 222.
To be voluntary, the consent must be the product of an
"individual's free and unconstrained choice" rather than a
person's "mere acquiescence in a show of authority."  United
States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993).  Ultimately,
the question of voluntariness is a question of fact "to be

determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227.

In this case, Defendant spontaneously asked the Troopers to retrieve his cellular phone from the bedroom night stand believing that information on it would exonerate him.  Only after confirming Defendant's request did Smith conduct the search.[3] The scope of the search was at all times limited to the night stand area of the bedroom and at that point, the guns were in plain view next to the night stand and their incriminating nature was immediately apparent.  Under these facts, and in the absence of any credible evidence that Defendant was merely acquiescing in a show of authority or was being coerced,[4] the Court concludes the consent to search was voluntary.  Consequently, the September 14, 2006 search does not provide a basis to suppress the cellular phone and guns seized on that evening, or statements made after the September 14, 2006 search.

---

[3]Although not raised in the motion to suppress, because at the evidentiary hearing defense counsel's questions concentrated on the absence of Miranda warnings on September 14, 2006, the Court notes that volunteered statements by a defendant and an officer's requests for confirmation are not "custodial interrogations" for purposes of the Miranda doctrine.  See, e.g., United States v. Banks, 2002 WL 1611642, at *3 (E.D. La. July 19, 2002).

[4]The fact that Defendant "was under arrest and in custody, or even handcuffed, does not as a matter of law require a finding of coercion."  United States v. Crespo, 834 F.2d 267, 271 (2d Cir. 1987).

IV.   <u>Conclusion</u>

For these reasons, Defendant's Motion to Suppress is DENIED. This case will be placed on the August 8, 2007 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 15th day of June, 2007.

/s/ J. Garvan Murtha

J. Garvan Murtha<br>
United States District Judge